**In re MILLENNIUM MULTIPLE EMPLOYER WELFARE BENEFIT PLAN, Debtor.**

**No. BK–10–13528–WV.**

United States Bankruptcy Court, W.D. Oklahoma.

Feb. 3, 2012.

Mark B. Rabe, David Kriewaldt, Gregg
S. Weinberg, Robert Markel PC, Houston,
TX, Briana L. Cioni, Cliff I. Taylor, Racha-
el L. Smiley, Steven A. Felsenthal, Stutz-

man, Bromberg, Esserman & Plifka, Dallas, TX, David Marcus, Marcus & Cinelli LLP, Williamsville, NY, Doug Skierski, Dallas, TX, Edward A. Scallet, Hisham M. Amin, Katherine S. Kamen, Lars C. Golumbic, Groom Law Firm, Washington, DC, Edward Urquhart, Houston, TX, Erin K. Lovall, Franklin Skierski Lovall Hayward LLP, Dallas, TX, G. Blaine Schwabe, III, Gary A. Bryant, Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, OK, George R. Abramowitz, Dewey & Lebeouf, LLP, Washington, DC, J. Brandon McWherter, Gilbert Russell McWherter PLC, Jackson, TN, Jacob L. Newton, Dallas, TX, James E. Palinkas, J.E. Palinkas, P.C., Shawnee, OK, John J. Little, Little, Pedersen, Fankhauser L.L.P., Dallas, TX, Kathleen Barrow, Houston, TX, Kiran A. Phansalkar, Conner & Winters, P.C., Oklahoma City, OK, Kyung S. Lee, Diamond McCarthy LLP, Houston, TX, Layla J. Dougherty, Oklahoma City, OK, Mark Grossberg, Thompson & Knight, LLP, Houston, TX, Peter Franklin, Dallas, TX, Philip O. Watts, Watts & Watts, Oklahoma City, OH, Rhonda D. Orin, Anderson, Kill & Olick, L.L.P., Washington, DC, Timothy Quaid Karcher, Dewey & Leboeuf LLP, New York City, Tony Juneau, Mitchell Williams Selig Gates & Woodyard, Rogers, AR, for Debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING FINAL FEE APPLICATION OF DEWEY & LEBOEUF, LLP

T.M. WEAVER, Bankruptcy Judge.

Before the court is the final application for allowance of compensation and reimbursement of expenses ("fee application") of Dewey & LeBoeuf, LLP ("D & L"), special counsel to the Debtor (Doc. 1865), and the objection thereto of the Official Committee of Unsecured Creditors ("the Committee") (Doc. 1923). The court conducted a hearing on the application on August 25 and 26, 2011. At the conclusion of the hearing, the court requested the parties to submit proposed findings of fact and conclusions of law. The proposed findings and conclusions have been submitted and the court, having reviewed the submissions, the evidence presented at the hearing, the pertinent files and records in the case and the applicable law, renders its findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052.

*Findings of Fact*

1. By order entered on October 22, 2010 (Doc. 378), the court granted the Debtor's application for approval of the employment of D & L as special counsel (the "employment application") (Doc. 8), *nunc pro tunc* to June 9, 2010, the date of the employment application, and the date on which the Debtor commenced these proceedings under chapter 11 of the Bankruptcy Code (the "petition date").

2. The employment application requested that D & L be employed for the purpose of providing representation to the Debtor concerning tax matters, primarily related to the issue of whether the Millennium Multiple Employer Welfare Benefit Plan (the "Plan") qualified for treatment under § 419A(f)(6) of the Internal Revenue Code ("IRC") (the "qualification issue").

3. The qualification issue had become a significant concern of the Plan for several years preceding the filing of bankruptcy.

4. The Internal Revenue Service ("IRS") had issued a private letter ruling in 2007 that the Plan was not § 419A(f)(6) compliant. The Plan then sued the IRS to prevent publication of the ruling.

5. Thereafter, the IRS disallowed deductions for Plan contributions made by

certain taxpayers who were participating employers in the Plan.

6. Pre-petition, some of the taxpayers had commenced litigation against the IRS seeking a ruling that their contributions to the Plan were tax deductible. The litigation was pending on the petition date.

7. Among the participating employers who were litigating with the IRS on the petition date were taxpayers *Goyak, Buck, Diogenes* and *Accent Dental.*

8. A principal issue in the litigation was whether the Plan was qualified under IRC § 419A(f)(6).

9. On the petition date, there was also pending significant litigation, in several courts, that had been brought against the Debtor by more than 100 employers and employees who were participating in the Plan.

10. In these suits against the Debtor, the plaintiffs asserted claims of fraud and misrepresentation regarding the Plan's purported qualification under IRC § 419A(f)(6) and the income tax deductibility of the employers' contributions to the Plan.

11. Other defendants in the litigation include insurance companies that issued policies on the lives of the participating employees and purported agents of the insurance companies.

12. Pre-petition, the committee overseeing the Plan had developed a strategy to defend the Plan's qualification under IRC § 419a(f)(6) by the use of "test cases." Cases brought by taxpayers *Goyak, Buck, Diogenes* and *Accent Dental* were chosen as the test cases. The ultimate goal was to reach a settlement with the IRS that confirmed the tax qualification of the Plan.

13. Pre-petition, and pursuant to an engagement letter dated January 9, 2009, (Doc. 8, Exhibit 1 to Affidavit of George R. Abramowitz), the Plan had retained D & L to litigate the test cases.

14. It was part of the strategy of D & L and the Plan to obtain court permission allowing the Plan to intervene in the test cases.

15. D & L was unsuccessful in gaining court approval for the Plan's intervention in the test cases. As a consequence, D & L entered its appearance in the cases as co-counsel for the respective taxpayers.

16. On August 5, 2009, the Plan obtained the written opinion of its Employee Retirement Income Security Act ("ERISA") counsel, the Groom Law Firm, that the provisions of ERISA did not prohibit the Plan's payment of litigation expenses of a participating employer-taxpayer relating to the deductibility of contributions made to the Plan by the employer. (D & L Ex. 2).

17. Debtor's application for employment of D & L (Doc. 8) proposed specifically that D & L continue its representation in the test cases, including the preparation of post-trial briefs in the *Goyak* case, then pending in the United States Tax Court in Texas, and in assisting in the jury trial of the *Buck* case, then pending in the United States District Court for the Southern District of Texas. The Debtor further proposed that D & L assist in continuing efforts to negotiate a resolution of the qualification issue with the IRS.

18. D & L did perform extensive post-trial briefing in the *Goyak* case during the first few months after the petition date. The briefs focused on the issue of the Plan's qualification under IRC § 419A(f)(6).

19. D & L's opening brief consisted of over 150 pages and its reply brief, which responded to approximately 600 proposed findings of the IRS, was of similar length.

20. D & L also assisted in the jury trial in the *Buck* case in the summer of 2010. The case was decided against the taxpayer, the jury finding that the contributions to the Plan were not ordinary and necessary business expenses under IRC § 162. As a consequence, the Plan's qualification under IRC § 419A(f)(6) was not determined in the case.

21. Pre-petition discussions between D & L and the IRS regarding a possible "global settlement" had commenced in February, 2010, and continued post-petition.

22. An agreement for a "global settlement" was reached in early 2011. Under the terms of the settlement, participating employers in the Plan would be allowed tax deductions for contributions made to the Plan. The settlement had the effect of determining that the Plan was qualified under IRC § 419A(f)(6). However, it was a term of the settlement that it had no effect on the taxpayers in the litigation pending with the IRS at the time.

23. On May 24, 2011, this court entered its order approving the settlement with the IRS, without objection. (Doc. 1326).[1]

24. In his testimony at the hearing on the fee application, George R. Abramowitz, senior tax partner of D & L, opined that it was unlikely that the IRS settlement would have occurred without the efforts of D & L in the test cases, and particularly in the *Goyak* case.

25. The IRS settlement resolved the uncertainty concerning the deductibility of contributions to the Plan by non-litigating participating employers.

26. The approval of the IRS settlement was soon followed by this court's order confirming the Debtor's Third Amended Chapter 11 Plan of Liquidation ("Liqui-dation Plan"), entered on June 16, 2011. (Doc. 1567)

27. The confirmation order was entered after all objections to confirmation had been resolved, save the objection of *Goyak* and his entity.

28. *Goyak* objected to being placed in the same creditor classification as other Plan participants who would receive substantial tax benefit under the IRS settlement, contrary to *Goyak* who was litigating with the IRS. (Doc. 1372)

29. This court overruled *Goyak's* objection. (Doc. 1567)

30. It was a requirement of the IRS settlement that the Debtor's assets be liquidated pursuant to the order of this court. (Doc. 1275, Ex. A., p. 2, par. 2).

31. The time shown in D & L's fee application was actually expended by D & L attorneys and support staff in its representation of the Debtor.

32. The D & L attorneys who performed most of the services covered by the fee application were George Abramowitz ("Abramowitz"), Mark Allison ("Allison") and Tamara Ashford ("Ashford"). Abramowitz was a senior tax partner in the firm, having practiced tax law for over 40 years and having extensive experience in tax litigation. Allison was a younger tax partner who was admitted to the bar in 1996 and who had considerable tax litigation experience. Ashford, who was admitted to the bar in 1995, was a recent addition to D & L and who has since left D & L to become Assistant Attorney General in the U.S. Department of Justice with responsibility for all tax appeals. Abraham Hap Shashy also performed services described in the fee application. Shashy was a senior tax partner who formerly was chief counsel to the IRS.

---

1. Debtor's motion for approval of the settle-ment agreement is found at Doc. 1275.

33. The hourly rates that D & L charged the Debtor for the services of the above four attorneys were:

Abramowitz      $850

Shashy      $875

Allison      $750

Ashford      $675

(Doc. 1865, p. 2).

34. The total time expended by all D & L attorneys for all services rendered for the Debtor was 2873 hours. (Doc. 1865, pp. 1–2).

35. D & L's fee statement covering the period from the petition date through September 30, 2010, relates primarily to services performed in the *Buck* and *Goyak* cases. The total time expended by D & L attorneys during this time frame was 1552 hours (1600 hours for all D & L staff less 46 hours for paraprofessionals and a summer associate). (Doc. 1865 pp. 11–26).

36. Fees charged by D & L for services rendered by its attorneys during the time period ending September 30, 2010, are $1,129,353 (total billings of $1,138,853 for all staff less paraprofessional and summer associate billings of $8,930). (Doc. 1865, pp. 11, 26).

37. D & L's blended hourly rates for services rendered in the time period ending September 30, 2010, are $727 (excluding paraprofessionals) and $711 (including paraprofessionals). (Doc. 1865, pp. 11, 26).

38. D & L's blended hourly rates for all services rendered for the Debtor are $720 (excluding paraprofessionals) and $711 (including paraprofessionals). (Doc. 1865, p. 1).

39. Eleven D & L attorneys performed services during the time period ending September 30, 2010, during which period the work on the *Buck* and *Goyak* cases was rendered. The hourly billing rates for the eleven attorneys ranged from $535 to $875. (Doc. 1865, p. 26).

40. Approximately 86 percent of the fees charged by D & L for work by its attorneys for the time period ending September 30, 2010, and 84 percent of the time billed during that period by attorneys, was attributed to the following three attorneys, as shown below:

| Attorney | Hours Billed (Rounded) | Hourly Rate | Fees Charged | % of Total Time Billed | % of Total Fees Charged |
|---|---|---|---|---|---|
| Abramowitz | 313 | $850 | $265,625 | 20% | 24% |
| Allison | 405 | $750 | $303,375 | 26% | 27% |
| Ashford | 589 | $675 | $397,406 | 38% | 35% |
| Total | | | $964,406 | 84% | 86% |

(Doc. 1865, p. 26).

41. Prepetition, the Plan had employed the firm of Thompson & Knight ("T & K") to serve as lead counsel for the plaintiffs-taxpayers in the *Buck* case, for the purpose of litigating the Plan's qualification under IRC § 419A(f)(6).

42. This court approved the Debtor's application to employ T & K as special counsel (Doc. 44), thus allowing T & K to continue serving as lead counsel in the *Buck* case. (Doc. 387).

43. The role for which D & L was engaged in the *Buck* litigation was to support and assist T & K in the jury trial. (Tr., Aug. 26, 2011, p. 70, lines 5–25, p. 71, lines 1–24).

44. Lead counsel, T & K, used only one attorney, Marc Grossberg ("Grossberg"), in the *Buck* jury trial. Grossberg was

senior tax counsel for the firm with more than 40 years experience.

45. D & L used three attorneys for purposes of their supporting role in the *Buck* trial. (Tr. Aug. 26, 2011, p. 70, lines 5–25, p. 71, lines 1–24).

46. The fees charged by T & K for the *Buck* trial are approximately $192,000, while D & L's fees for the trial are approximately $230,000. (Doc. 500, Ex. B; Doc. 1887, Exs. A and B; Doc. 1865, pp. 12–14, Tr. Aug. 26, 2011, pp. 72–73).

47. Grossberg's hourly billing rate for the *Buck* case was $650. T & K's blended rate (including paraprofessionals) for the *Buck* case was $352, due to the extensive use of paraprofessionals. (Doc. 500, Ex. B).

48. D & L did not use paraprofessionals in the *Buck* trial, nor generally in its performance of other services for the Debtor, as reflected by the slight difference between D & L's blended rate for all services of $720, excluding paraprofessionals, and its blended rate of $711, including paraprofessionals. (Doc. 1865, p. 1).

49. Neither D & L nor the Committee provided the court with any expert opinion concerning whether the fees requested by D & L are reasonable, or if not, what a reasonable fee would be.

50. The court has done a comparative analysis of the fees it has allowed herein for counsel that have performed significant work for the Debtor and the Committee during these proceedings. To the extent relevant information is available, or capable of determination, from fee applications and/or orders on file herein, the analysis reflects, among other things, the range of attorney billing rates. The findings so determined are then compared with the fee application of D & L. The analysis is as follows:

| Law Firm | Total Atty. Fees Awarded (excluding expenses) | Blended Hourly Rate of Attys., excluding paraprofessionals (rounded) | Highest Atty [2] Billing Rate |
| --- | --- | --- | --- |
| Mock, Schwabe et al (Debtor's counsel) (Doc. 1597, p. 2, 42; Doc. 1850, p. 3) | $ 641,352 | $ 288 | $ 345 |
| Franklin Skierski et al (Debtor's counsel) (Doc. 1598, p. 8; Doc. 1882, p. 3) | $ 1,113,225 | $ 337 [3] | $ 400 |
| Diamond McCarthy (Committee counsel) (Doc. 1602, p. 1, Exhibit C; Doc.1985) | $ 1,255,466 | $ 513 [4] | $ 625 |
| Price & Associates (Special counsel to Committee-tax specialist) (Docs. 1890 & 1997) | $ 122,825 | $ 375 | $ 375 |
| Stutzman, Bromberg et al (Special counsel to Debtor) (Doc. 1611, p. 1, Ex. A, p. 15; Doc.1914, p. 3) | $ 519,608.50 | $ 544 | $ 725 |

**2.** Highest billing rate charged by attorney in law firm.

**3.** Rate is based on 3305 hours per final fee application (Doc. 1598, p. 8), notwithstanding that fee application alleges blended rate of $258. It is presumed that the alleged blended rate includes services of paraprofessionals.

**4.** Due to lack of more data, rate is based on March 1, 2011—June 30, 2011, billing period with fees charged of $317,522 and 619.2 hours billed.

| | | | |
|---|---|---|---|
| Groom Law Group (Special counsel to Debtor—ERISA specialist) (Doc. 1884, p. 2; Doc.1992, p. 4) | $1,172.945.20 | $ 548 [5] | $ 675 |
| Roberts Markel et al (Special counsel to Debtor) (Doc. 1861, p. 2; Doc.1936, p. 4) | $ 347,227.50 | $ 352 | $ 425 |
| Thompson & Knight (Special counsel to Debtor—tax specialist) (Doc. 1887, Ex. B; Doc. 1973, p. 3) | $ 225,421.00 | $ 585 [6] | $ 685 |
| | | $3542 | $4255 |
| Average for the above 8 firms | | $ 443 | $ 532 |
| D & L (Doc. 1865, p. 1–3) | $2,100,000 (Rounded) | $ 720 | $ 875 |

51. Fees sought by D & L for the preparation of its fee application and defense of the application (i.e., handling fee objections), including time expended and blended hourly rates for attorneys are as follows:

| | Fees (rounded) | Hours (rounded) | Attys. Blended Rate (rounded) |
|---|---|---|---|
| Preparation of fee application | $115,776 | 171 | 678 |
| Defense of fee application | $ 67,440 | 95 | 707 |
| Total | $183,216 | 266 | 689 |

(Doc. 1865, pp. 2–3).

52. The requested combined fees for the preparation and defense of its fee application, $183,216, represent 8.7 percent of the $2.1 million in fees requested for all D & L services. The time expended by D & L attorneys for both preparation and defense of the fee application (266 hours) is 9.2 percent of the nearly 2900 hours attorneys spent on all D & L services.

53. At the request of Steven A. Felsenthal, Millennium Liquidation Trustee, D & L has agreed to reduce the amount requested in the fee application by $52,000. The reduction consists of a decrease of $25,000 in fees relating to work on the Goyak and Buck cases, a decrease of $25,000 in fees relating to the preparation and defense of the fee application and a $2,000 decrease in expenses for which reimbursement has been sought.

54. At the request of the United States Trustee, D & L has agreed to reduce its fees for work on the test cases by $25,000.

55. To the extent that any of the court's legal conclusions contained in the next section of this order constitute factual findings, such findings are incorporated herein by reference.

*Conclusions of Law*

The following conclusions of law shall include any of the court's factual findings

---

5. Rate is based on amount alleged in final fee application (Doc. 1884, p. 2). As fees awarded by court were less than requested, blended rate would be less than shown above, but exact amount not available.

6. Rate shown is based on hours expended by attorneys and fees requested. As court awarded less fees than requested, blended rate (excluding paraprofessionals) would be less than shown above, but exact amount not available. Blended rate (including paraprofessionals) for fees awarded by court is $384.

contained in the preceding section that constitute legal conclusions, and such legal conclusions are incorporated herein by reference.

■ Compensation for services and reimbursement of expenses of professional persons are governed by section 330 of the Bankruptcy Code.[7] This section specifically requires that the professional person to be compensated or reimbursed be one "employed under § 327 or 1103." The parties do not dispute that the Debtor's employment of D & L was approved by the court. There is disagreement, however, concerning whether D & L was authorized to provide representation in the *Buck* and *Goyak* cases. The Committee asserts that in those cases D & L represented the taxpayers, and not the Debtors, for which permission was not granted. However, this court's order authorizing D & L's employment was sufficiently broad to cover the rendition of services in the *Buck* and *Goyak* cases in order that D & L might defend the tax qualification of the Plan. D & L had attempted to get the approval of the respective courts for the Debtor's intervention in the cases. Having failed in this effort, it became necessary for D & L to serve as additional counsel for the taxpayers in order to be able to defend the Plan's tax qualification. For these reasons, the court concludes that D & L was authorized to perform the services it rendered in the *Buck* and *Goyak* cases.

■ The "threshold issue" bearing on a professional's eligibility for compensation is whether the professional's services conferred a benefit on the bankruptcy estate. *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enters., Inc.)*, 997 F.2d 1321,

1323 (10th Cir.1993). The bankruptcy court may award reasonable fees for "actual, necessary services rendered by the … professional person, or attorney and by any paraprofessional person employed by any such person…." 11 U.S.C. § 330(a)(1)(A). "An element of whether the services were 'necessary' is whether they benefitted the bankruptcy estate." *In re Lederman Enters.*, 997 F.2d at 1323. The Committee takes the position that D & L's services in the *Buck* and *Goyak* cases did not benefit the estate because D & L was representing non-debtors and further, that D & L's work did not facilitate the eventual settlement with the IRS. In its previous discussion, this court found that D & L was required to enter its appearance as co-counsel for the taxpayers in those cases because it had been unsuccessful in obtaining court permission for the Plan to intervene as a party. Suffice it to say here that D & L represented the interests of the Plan in advocating for the Plan's qualification under IRC § 419A(f)(6).

■ Given that the Plan's qualification under § 419A(f)(6) was the principal issue in the pending litigation against the Debtor, it was beneficial to the estate to defend its tax qualification. Further, it appears likely that the advocacy of D & L in the two test cases was beneficial in its successful negotiations with the IRS, leading to the favorable settlement. Thus, the court concludes that D & L's services did confer a benefit on the Debtor's estate and are thus compensable.

■ The bankruptcy court has an independent duty to review professional fee applications, even if no party in interest objects. *In re Busy Beaver Building*

---

7. Unless otherwise specified, all references to sections herein are to title 11 of the United States Code.

*Ctrs., Inc.*, 19 F.3d 833, 841 (3d. Cir.1994); *In re Albrecht*, 245 B.R. 666, 672 (10th Cir. BAP 2000). In doing so, bankruptcy courts have wide discretion in awarding compensation to professionals as long as it is reasonable. *Houlihan Lokey Howard & Zukin Capital v. Unsecured Liquidating Trust (In re Commercial Fin. Servs., Inc.)*, 427 F.3d 804, 810 (10th Cir.2005).

Section 330(a)(3) directs that in determining what is reasonable compensation to be awarded for the professional's services:

the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors including—

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)-(E).

▮ In the Tenth Circuit, an adjusted lodestar method is to be used in determining reasonable compensation for a profes-sional's services. *Connolly v. Harris Trust Co. (In re MiniScribe Corp.)*, 309 F.3d 1234, 1243–44 (10th Cir.2002); *In re Lederman Enters., Inc.*, 997 F.2d at 1323. This method takes into account all of the factors specified by § 330(a)(3) and the additional factors prescribed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) (the "Johnson factors"). The Johnson factors, while all are not applicable here, include the novelty and difficulty of the task, the requisite skill level, whether the case precluded other employment, the contingent nature of the fee, time limitations, the amount of money involved and results obtained, and the experience, reputation, and ability of the trustee. *Id.* at 717–19. The lodestar analysis begins with a determination of the amount of time reasonably required to perform the services provided by the professional. The time so determined (typically in hours) is then multiplied by what the court finds is a reasonable rate for the professional's services. *In re MiniScribe* 309 F.3d at 1244. The burden is on the party requesting fees to prove the reasonableness of the request. *In re Commercial Fin. Servs.*, 427 F.3d at 811.

▮ In considering the reasonableness of time expended by an attorney, the court must determine whether the attorney has exercised "billing judgment". *Case v. Unified School District No. 233*, 157 F.3d 1243, 1250 (10th Cir.1998) (applying lodestar method to fee application arising out of a civil rights case). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Id.* at 1250. In its analysis, the court may consider the complexity of the legal issues involved. *Id.; Frazin v. Haynes & Boone LLP (In re Frazin)*, 413 B.R. 378, 424 (Bankr.N.D.Tx. 2009). Another factor that should be examined is the potential duplication of ser-

vices. "... [If] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time...." *Ramos v. Lamm,* 713 F.2d 546, 554 (10th Cir.1983) (*quoting Copeland v. Marshall,* 641 F.2d 880, 891 (D.C.Cir. 1980)). In its analysis, the court may consider the number of attorneys utilized by the opposing side in similar situations. *Id.*

The Committee's objection raises significant billing judgment issues. It complains about the number of attorneys utilized by D & L in the *Buck* jury trial. D & L used three attorneys despite the fact that D & L's role was to assist lead counsel, T & K. T & K used only one attorney in the trial. T & K's fees were nearly $40,000 less than those of D & L (approximately $192,000 as compared to $230,000). The Committee also objects to the distribution of work among D & L's attorneys in both the *Buck* and *Goyak* cases, and particularly in the *Goyak* post-trial briefing. As the time records show, a considerable amount of the briefing time was expended by D & L senior attorneys whose billing rates were quite high, ranging from $675 to $850 per hour. The Committee maintains that much of the work, particularly legal research, could have been delegated to more junior attorneys whose billings rates were substantially lower.

Services rendered in the *Buck* and *Goyak* cases comprise most of the charges in the D & L fee statement covering the period from the petition date through September 30, 2010. Eleven attorneys performed services during this time period, with hourly rates as low as $535. However, as the court's analysis revealed, 85% of the fees charged and 84% of the time spent was attributed to attorneys Abramowitz, Allison, and Ashford, whose hourly billing rates were $850, $750 and $675, respectively. The court agrees with the committee that D & L did allocate a disproportionate amount of the work in the *Buck* and *Goyak* cases to attorneys with the highest billing rates.

This disproportionate allocation was not limited to the *Buck* and *Goyak* cases. The court's analysis reveals that the total fees sought in the D & L fee application covering all services, according to the Time-keeper Information Sheet (Doc. 1865, Pages 2 and 3) is $2,094,931, and the total time billed was 2,873 hours.[8] The services were performed principally by attorneys Abramowitz, Ashford and Allison. The hours billed, rates and total fees for these three attorneys are as follows:

|  | Hours | Hourly Rate | Fees |
|---|---|---|---|
| Abramowitz | 804 | $850 | $ 683,485 |
| Ashford | 596 | $675 | $ 402,671 |
| Allison | 712 | $750 | $ 534,205 |
| Total | 2112 |  | $1,620,381 |

The 2112 hours expended by these three attorneys represents 74 percent of the total time billed. The fees charged for these three attorneys represents 77 percent of

**8.** The $2,094,931 figure is the sum of all fees listed, and the 2873 hours billed is the sum of all time shown, on the Timekeeper Information Sheet, which is the second page of the fee application cover sheet. The first page of the cover sheet reflects a total fee of $2,080,067.75. The court is unable to reconcile the difference in the two fee amounts. The $2,094,931 figure was used in the court's analysis because only the Timekeeper Information Sheet showed the hours billed. The difference in the two fee amounts is not of such significance as to change the court's analysis.

the total fees. In relation to the total fees charged by D & L, these three attorneys billed the following:

| | |
|---|---|
| Abramowitz | 32.6% of total fees |
| Ashford | 19.2% of total fees |
| Allison | 25.5% of total fees |
| Total | 77.3% of total fees |

To summarize, Abramowitz, whose hourly rate was $850, billed about 1/3rd of the total fees; Allison, with an hourly rate of $750, billed about 1/4th of the total fees and Ashford, whose billing rate was $675 per hour, billed about 1/5th. Other attorneys listed on the Timekeeper Information Sheet who did relatively minimal work for the debtor had billing rates ranging from $535 to $625 per hour. It is thus clear that this disproportionate distribution of work to the higher charging lawyers resulted in the very high blended rate of $720 for the work of all of the D & L professionals.

■ Unfortunately, neither D & L nor the Committee provided the court with much evidentiary assistance in determining reasonable compensation for D & L. No expert testimony or evidence was produced by either party addressing what is or would be a reasonable hourly rate for the services performed by D & L, nor a total fee for the services. Thus, the court must turn to other sources for evidence in fulfilling its duty to determine reasonable compensation. In its analysis, the court is expressly authorized to consider fees charged by comparably skilled practitioners in non-bankruptcy cases. § 330(a)(3)(E). However, there is no evidence in the record of such fees. Under these circumstances it is appropriate to consider fees charged by other attorneys

in this case. *In re Commercial Fin. Servs., Inc.,* 427 F.3d at 813 (court considered rates charged by other financial firms in bankruptcy case in determining reasonable fees for financial advisor). Thus, this court's comparative analysis of fees previously awarded in this case is a useful tool to aid in the resolution of the reasonableness issue.

The comparison of the hourly billing rates of D & L with those of other attorneys in this case, as shown in the factual findings herein, is telling. The average blended rate for attorneys (excluding paraprofessionals) in the eight law firms listed in the analysis is $443. This compares to D & L's blended rate of $720. The average of the blended rates charged by the highest charging attorneys providing services herein of the eight attorney firms was $532, as compared to $875 for D & L. The tax specialists, T & K and Price & Associates, charged blended rates for attorneys of $585 and $375, respectively, as compared to D & L's $720 rate. The highest charging attorney rate in T & K's firm was $685, in the Price firm, $375, and in D & L, $875.

The court recognizes that attorney billing rates may vary according to location and demographics.[9] Yet, there is no evidence that these factors account for the vast disparity between the billing rates of D & L and the eight firms included in the court's analysis. Both Groom Law Group and D & L are Washington, D.C. law firms, yet Groom's average billing rate was $170 per hour less than D & L's ($548 and $750, respectively). Five of the eight firms in the court's analysis are located in major cities in the southwestern part of the country—Dallas, Texas (Franklin Ski-

---

9. Neither D & L nor the Committee presented any evidence or argument concerning whether the appropriate hourly rate should be the

prevailing local market rate. For this reason, the court does not address that issue.

erski, Diamond McCarthy and Stutzman Bromberg) and Houston, Texas (Thompson Knight and Roberts Markel). The hourly rates of these five firms averaged more than $250 less than D & L's rate ($460 and $720, respectively). Eliminating the two lowest billing rates of this group of five results in an average rate of $547, about $170 less than the D & L rate.

The court next considers the skill and expertise of D & L, one of the Johnson factors, as compared to that of the other firms in the comparative analysis. The court is most impressed with the qualifications and experience of the D & L attorneys who provided services for the Debtor. They are highly-skilled and competent tax counsel. However, the court is also impressed with the skills and competence of the attorneys in the eight firms in the comparative analysis. From the evidence presented, the court does not find an appreciable difference between the skill and expertise of the D & L attorneys and the other attorneys in the analysis. The difference, if any, does not explain the billing rate disparity.

Another of the relevant Johnson factors is the result obtained by the efforts of the attorneys. To be sure, the results achieved by the efforts of D & L were favorable. The court has previously found that D & L's efforts in the test cases, and especially in the *Goyak* case, were beneficial in D & L's negotiations with the IRS. D & L's negotiating skills were also key in achieving the IRS settlement. With the tax qualification issue resolved, the Debtor was able to negotiate what was essentially a consensual plan of liquidation.

The novelty and difficulty of the task, another of the Johnson factors, should be examined as well. The only evidence offered by D & L on this issue was the testimony of George R. Abramowitz, D & L's senior tax partner and, to some extent,

the testimony of Jonathan Cocks, the Plan administrator. This evidence leads the court to believe that negotiating a settlement with the IRS was not a particularly simple task. Yet, the testimony is not sufficient to persuade the court concerning the degree or extent of the novelty or difficulty of the task. An expert witness on this issue might have been helpful to the court, but none was presented.

While D & L's efforts led to a favorable result, in what was not a simple task, these factors alone do not justify the fees it requests, when considered in relation to the fees awarded by the court to other highly-skilled counsel in this case. With respect to the other relevant "Johnson factors" discussed above, there are not significant differences between D & L, and its work, and the other firms in the comparative analysis, and their work, that would make a case for the fees D & L seeks.

For the foregoing reasons, the court finds that D & L has failed to sustain its burden of proving that the fees it requests are reasonable. The court must therefore determine a reasonable fee for D & L. After applying the lodestar method and giving consideration to the § 330 factors and the relevant Johnson factors, the court finds, in its discretion, that a reasonable fee for all services rendered by D & L herein (except for services relating to the preparation and defense of its fee application) is $1,700,000.

As previously found, D & L has billed 266 hours and seeks fees of $183,216 for the preparation and defense of its fee application. In relation to its overall fee application, 9.2 percent of the total time billed and 8.7 percent of the total fees sought are related to D & L's fee application. (Doc. 1865, p. 3).

■ Compensation may be awarded for the preparation of a fee application "based on the level and skill reasonable required to prepare the application". 11 U.S.C. § 330(a)(6). However, the Bankruptcy Code does not address whether compensation may be awarded for defending a fee application against objections. Courts are divided on whether the successful defense of a fee application is compensable. Courts awarding such fees have found that to do otherwise would dilute the fee award in violation of § 330(a), thus impermissibly reducing the effective compensation of bankruptcy attorneys to levels below that of attorneys generally. *Smith v. Edwards & Hale, Ltd. (In re Smith),* 317 F.3d 918, 928 (9th Cir.2002), *abrogated on other grounds by Lamie v. United States Trustee,* 540 U.S. 526, 531–39, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Other courts awarding such fees are *Boyd v. Engman,* 404 B.R. 467, 482–83, (Bankr. W.D.Mich.2009) (defending attorney fee application is part of attorney's role in the bankruptcy administration process and thus compensable), and *Big Rivers Electric Corp. v. Schilling (In re Big Rivers Electric Corp.),* 252 B.R. 670, 675 (Bankr. W.D.Ky.2000) (failure to award such fees would force applicant to bear costs of defending a fee that was properly awarded by the court).

Fees for the defense of fee applications have been denied by courts finding that the estate was not benefitted thereby, and that awarding fees could encourage the assertion of meritless fee requests. *Boldt v. Crake (In re Riverside–Linden Inv. Co.),* 945 F.2d 320, 324 (9th Cir.1991). Other courts have denied such fees on the basis that the "American Rule" applies and that parties generally must bear their own litigation expenses absent specific statutory authority or contractual provision to the contrary. *In re St. Rita's Assoc. Private Placement L.P,* 260 B.R. 650, 652 (Bankr.

W.D.N.Y.2001). *See In re Frazin,* 413 B.R. at 400 (Bankr.N.D.Tx.2009).

The court is unaware of any Tenth Circuit authority on the issue. Having considered the cases on both sides of the issue, the court finds compelling the rationale of the *Engman* case that allowing fees for the defense of a fee application is consistent with the overall purpose of § 330 of the Bankruptcy Code, and provides a benefit to the bankruptcy estate and to the bankruptcy system. *See In re ASARCO, LLC,* 2011 WL 2974957, at *39–40 (Bankr. S.D.Tx., July 20, 2011) (adopting *Engman* analysis).

■ While the court will award fees for both the preparation and defense of the fee application in this case, the amount to be awarded should be carefully considered. It would seem obvious that the level of skill and expertise required for the preparation and defense of a fee application would be less than that required for representation on more substantive issues. For this and various other reasons, bankruptcy courts have tended to limit the amount of fees awarded for the preparation and defense of fee applications as compared to fees awarded for other services rendered by attorneys. A number of bankruptcy courts have placed a cap on the amount awarded. *In re Bass,* 227 B.R. 103, 109 (Bankr.E.D.Mich.1998) (fees for preparation of fee application limited to 5% of total fees requested, absent exceptional circumstances); *In re Atwell,* 148 B.R. 483, 491–92 (Bankr.W.D.Ky.1993) (same). *See In re Mesa Air Group, Inc.,* 449 B.R. 441, 445 (Bankr.S.D.N.Y.2011) (fee cap not adopted, "but the 3%–5% range is a useful metric."); *In re Heck's, Inc.,* 112 B.R. 775, 793 (Bankr.S.D.W.Va.1990), *aff'd in part, rev'd in part on other grounds, In re Heck's Properties, Inc.,* 151 B.R. 739 (S.D.W.Va. 1992) (imposing a 3% cap for preparation of fee application); *In re Churchfield*

*Mgmt. & Inv. Corp.*, 98 B.R. 838, 866 (Bankr.N.D.Ill.1989) (compensable hours for preparation and litigation of fee application set at 10% of total hours applied for, departing from court's self-imposed limit of 3%); *In re Chicago Lutheran Hosp. Ass'n.*, 89 B.R. 719, 743 (Bankr.N.D.Ill. 1988) (applicant awarded 7.5% of total fees for prosecuting fee application).

One court has criticized the application of an arbitrary cap, believing that it might not adequately compensate an applicant seeking a modest fee award, while over-compensating those seeking substantial fees. *In re ACT Mfg., Inc.*, 281 B.R. 468, 485–86 (Bankr.D.Mass.2002) (using example that a $50,000 fee to prepare a $1 million fee application is probably excessive).

■ This court does not intend to impose a strict percentage cap on fees for the preparation and defense of fee applications in all cases. Yet, it finds the foregoing cases to be helpful in setting a range of reasonable compensation, subject to increases or decreases where there are unusual circumstances. The court considers a fee range of 3 percent to 5 percent for the preparation and defense of fee applications to be reasonable and would cover most situations. Here, D & L seeks total fees of about $2 million dollars. Applying a 3 percent to 5 percent range would result in fees ranging from $60,000 to $100,000. However, D & L seeks fees of $183,216. D & L has previously agreed to reduce its fees for the preparation and defense of its fee application by $50,000 to resolve objections by the U.S. Trustee ($25,000) and by the Millennium Liquidating Trustee ($25,-000). A further reduction is necessary.

■ The court finds that there are no unusual circumstances present that would justify a departure from the 3 percent to 5 percent range. The court believes that a fee in the upper end of the range is reasonable here. In its discretion, the court finds that a fee of $100,000 is reasonable compensation for the actual, necessary services performed by D & L in the preparation and defense of its fee application. This determination is based on the level and skill reasonably required to prepare and defend the fee application. This amount includes compensation for all fees through the date of the entry of this order, including, without limitation, services rendered in the hearing on the fee application and in the preparation of the findings of fact and conclusions of law.

The total fees of $1,800,000 herein approved yield a blended rate for D & L attorneys of slightly above $625 per hour. This rate is well in excess of the blended rates of the eight firms in the court's comparative analysis, but is justified by the favorable results obtained by D & L.[10]

For all of the foregoing reasons, it is the ruling of the court that reasonable compensation for the actual and necessary services performed by D & L herein, including compensation for all fees through the date of the entry of this order, and reimbursement for expenses shall be as follows:

| | |
|---|---|
| Fees for all services, except for preparation and defense of fee application | $1,700,000.00 |
| Fees for preparation and defense of fee application | $ 100,000.00 |
| Expense reimbursement | $ 65,459.42 |
| Total fees and expense reimbursement | $1,865,459.42 |

and the court hereby awards such fees and expense reimbursement to D & L.

IT IS SO ORDERED.

---

10. In oral argument, the Committee urged the court to reduce D & L's fees by 25 percent of the amount requested. However, there is no evidentiary support, either expert or factual testimony, for that proposition.